SO ORDERED.

SIGNED this 23 day of January, 2017.



_____

**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

YAHWEH CENTER, INC.,                              CASE NO. 16-04306-5-JNC
                                                  CHAPTER 11
      DEBTOR

### ORDER AUTHORIZING RULE 2004 DOCUMENT PRODUCTION REQUESTS

The matters before the court are three motions filed by Yahweh Center, Inc. (the "Debtor")

seeking orders pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure for the

production of documents from Southeastern Consolidated Holdings, LLC ("SCH"), Dkt. 135;

Robert E. Caton, Trustee of the Robert E. Caton Revocable Trust U/A Dated March 17, 1998 (the

"Caton Trust"), Dkt. 136; and Rick E. Graves, Trustee of the Kenneth C. Waters, Jr. Irrevocable

Trust U/A Dated October 14, 2003 (the "Waters Trust"), Dkt. 137 (collectively, the "Motions");

and the several responses thereto by SCH, Dkts. 143 and 165; the Caton Trust, Dkts. 144 and 163;

and the Waters Trust, Dkts. 145 and 164 (collectively, the "Responses"), objecting to and opposing

the relief requested by the Debtor in the Motions. A hearing was held on the Motions and

Responses in Greenville, North Carolina, on January 11, 2017.  Blake Y. Boyette, Esq. appeared

on behalf of the Debtor and Algernon L. Butler, III appeared on behalf of SCH, the Caton Trust, and the Waters Trust (collectively, the "Respondents").

## BACKGROUND

Yahweh Center, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 17, 2016. SCH holds a note secured by a deed of trust on real property owned by the Debtor in the claimed amount of $559,349.84. *See* Claim No. 20-1. The claim was acquired by SCH pre-bankruptcy from First-Citizens Bank & Trust Company.  The Waters and Caton Trusts are the members of SCH. Rick E. Graves, an attorney in Wilmington, North Carolina, is manager of SCH, and is also the trustee of the Waters Trust.

The Debtor filed the Motions on December 14, 2016, seeking production of a variety of documents from the Respondents including all documents related to the Debtor, as well as information related to the formation of the Waters and Caton Trusts. In the first set of Responses (Dkts. 143, 144, and 145), the Respondents did not produce any documents but instead objected to all document requests contained in the Motions as overly broad and burdensome. In a supplemental set of Responses (Dkts.  163, 164, and 165) filed immediately before the hearing, the Respondents refined and narrowed the objections to specified requests. As detailed below, the Respondents contend that certain requests – Requests 14, 15, 16, and 17 to SCH; Requests 1, 2, and 20 to the Caton Trust; and Requests 1, 2, 20, and 21 to the Waters Trust – are propounded for the purpose of harassment and are overly broad and burdensome.  In addition, the Respondents objected to identical Requests 3 and 4 contained in all three Motions and the definitions of "Identify" and "Identification" as overly broad and burdensome.  Finally, the Respondents raised and reserved objections based on protection of privacy and the attorney-client privilege.

## DISCUSSION

### Legal Standard

As a general matter, the scope of inquiry permitted under Rule 2004 is very broad, practically unrestricted by the usual concepts of materiality and relevance (or leading to material and relevant evidence) as are adversary proceeding and contested matter discovery provisions (Rules 7029 to 7037 of the Federal Rule of Bankruptcy Procedure). For example, a "fishing expedition" by a bankruptcy trustee is a perfectly acceptable use of Rule 2004. *In re Szadkowski,* 198 B.R. 140, 141 (Bankr. D. Md. 1996); *In re Ramadan*, No. 11-02734-8-SWH, 2012 WL 1230272 (Bankr. E.D.N.C. April 12, 2012). However, "practically unrestricted" does not mean entirely unfettered, as a few limited exceptions apply to the permissible limits of a Rule 2004 inquiry. The scope may not violate the recognized legal principles of the attorney-client privilege or the Fifth Amendment right against self-incrimination. *See In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997). Also, if an adversary proceeding or contested matter has commenced, this court adheres to the "pending proceeding rule," which requires that "once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 et seq., rather than by a Rule 2004 Examination." *In re Braxton*, 516 B.R. 787, 795 (E.D.N.C. 2014). Otherwise, the bankruptcy court holds "sound discretion" to determine whether Rule 2004 is the appropriate vehicle for "examination of a party" in a bankruptcy case. *McLaughlin v. McPhail,* 707 F.2d 800, 804 (4th Cir. 1983); *Braxton*, 516 B.R. at 794.

Here, no adversary proceeding or contested matter with overlapping subject matter to the Motions has been filed, so the pending proceeding rule will not apply. However, per Rule 2004(b), particularly for information sought from third parties, requests must bear some relation "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter

which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). Thus, the inquiry cannot be used for the purpose of harassment only or invade valid privacy concerns where otherwise unrelated to the liabilities, financial condition, rights, actions, and property of the Debtor or matters otherwise affecting the bankruptcy case. "An examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper." *In re Wilcher,* 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985); *In re Johns–Manville Corp.,* 42 B.R. 362, 364 (S.D.N.Y. 1984). In addition, even if sufficiently related to the debtor or its bankruptcy case, where a voluminous document search and production request is required for compliance, a balancing analysis of the cost and disruptive effect would be in order, as "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. at 434; *see also In re Whitley*, No. 10-10426C-7G, 2011 WL 6202895, at *2 (Bankr. M.D.N.C. Dec. 13, 2011). Here, the court will analyze the document requests and objections with broad scope and deference paid to the Debtor but with the protections for the Respondents offered by the noted exceptions.

### Definition Objections

First, the court will dispose of the Respondents' objection to the definitions of "identify" and "identification." Counsel for the Debtor prudently went to great length to define those terms to prevent a party from failing to produce otherwise responsive documents by hiding behind a narrow self-serving definitional interpretation of those words. Unfortunately, too many attorneys play this word game in seeking to avoid responding to discovery in a forthright manner, a tactic that this court will not tolerate.[1] A careful review of the definitions "identify" and "identification" as listed

---

[1] The court does not suggest that Respondents' counsel has engaged in such tactics. The definitional objection here appears to be more of an afterthought to the other more astute objections addressed in this order. The court finds that the three objections were made in good faith and were not made for any improper purpose.

by Debtor's counsel reveals nothing out of the ordinary or outside the plain meaning of those terms. Production of the responsive documents effectively satisfies the document identification requirement, with at most only a modest written explanation needed if the document is not readily self-identifying. Finally, it is impossible for the court to assess whether "identification" is unduly burdensome where the objection is made on a wholesale basis, rather than after at least listing the categories of responsive documents. The lack of any description leaves the court unable to fashion a remedy on the definitional objection. Therefore, the Respondents' collective objection on this basis is denied.

### Objections of Respondents to Requests 3 and 4

The Motions all included the following requests:

> *3.     Please produce and identify all documents relating to or concerning the Debtor.*

> *4.     Please produce and identify all documents relating to or concerning the Property.*

All three Respondents objected to these requests as overly broad. As explained above, the scope of Rule 2004 allows such a broad request with respect to the liabilities, financial condition, rights, actions, and property of the Debtor. Subject to the limitations described below, the objection to these requests is overruled and the Respondents are directed to provide responsive documents to the Debtor. To the extent the Respondents contend they have no such documents, that is a proper *response* to the request, but is not an appropriate *objection*.

### Objection of SCH

SCH objects to the following requests:

> *14.     Please produce and identify all documents or communications that  you received, provided, or otherwise exchanged internally, within you and among your representatives,  agents, managers, employees, officers, and third parties acting on your behalf, relating to the Debtor, the First Citizen Loan, the*

>       *Deed of Trust, the Assignment, the Property, and the Bankruptcy Case, from
>       January 1, 2010 to present date.*
>
>       15.    *Please produce and identify all documents and communications
>       relating to the formation, ownership, management, and control of SECH since the
>       date of its formation, including but not limited to Articles of Organization,
>       Operating Agreements, and bylaws, as well as any amendments thereto.*
>
>       16.    *Please produce and identify all documents and communications
>       relating to any wages, distributions, or other compensation received by SECH
>       members or managers from January 1, 2011 through present.*
>
>       17.    *Please produce the tax returns of SECH for the years 2011 through
>       2015.*

Dkt. 165.

At the hearing, it became apparent that SCH is a single purpose entity, existing for the sole purpose of holding a promissory note secured by a deed of trust on real estate owned by the Debtor. It has no business interests entirely unrelated to the Debtor resulting in a right of privacy that needs protection. All of SCH's business relates to the "acts, conduct, or property . . . of the debtor." SCH further acknowledged that the documents responsive to the specified Requests directed to it were limited in number, and the costs of production would not be excessive. To the extent SCH has documentary communications with the Caton Trust and the Waters Trust, those emails and letters would logically pertain to the Debtor. Finally, SCH could not offer any evidence that the documents were "requested solely for the purpose of harassment" as stated in its Response. All objections made on the basis of harassment, burden, or overly broad are denied.

In the end, SCH's objection actually boils down to protecting whatever attorney-client privilege it may have with its manager Rick Graves.[2] The attorney-client privilege objection is addressed below with that of the Caton Trust and the Waters Trust.

---

[2] Mr. Graves wears multiple hats in this matter, as he is the manager of SCH, attorney for the Caton Trust and the Waters Trust, the trustee of the Waters Trust, and is alleged to have represented the Debtor in the past.

**Objections of the Caton Trust and the Waters Trust**

The Caton Trust objects to the following requests:

> *1.     Please produce and identify all documents pertaining to the formation, creation, and existence of the Trust, including but not limited to, the Trust agreement and all amendments or supplements thereto.*
>
> *2.     Please produce and identify all documents pertaining to the designation of the Beneficiaries and any amendments or supplements thereto.*
>
> *20.     Please produce any and all tax returns filed by you, or on your behalf, including any schedules, statements, or attachments thereto, for the years 2010 through present.*

Dkt. 163.

> Similarly, the Waters Trust objects to the following requests:

> *1.     Please produce and identify all documents pertaining to the formation, creation, and existence of the Trust, including but not limited to, the Trust agreement and all amendments or supplements thereto.*
>
> *2.     Please produce and identify all documents pertaining to the designation of the Beneficiaries and any amendments or supplements thereto.*
>
> *20.     Please produce and identify all documents relating to and concerning distributions, compensation, payments, deposits, or other monetary amounts that were remitted by the Trust to the Trustee from January 1, 2010 through present.*
>
> *21.     Please produce any and all tax returns filed by you, or on your behalf, including any schedules, statements, or attachments thereto, for the years 2010 through present.*

Dkt. 164.

Unlike SCH, the Caton Trust and the Waters Trust are not single purpose entities with business limited to dealings with the Debtor.  Both trusts predate the Debtor, have numerous other investments, and otherwise hold bona fide reasons to refrain from producing documents that affect or pertain to the rights of others, such as the respective beneficiaries of the two trusts, and do not pertain to or affect the Debtor in any manner. As promulgated in the Rule 2004 Request for

Document production, the wording of Requests 1, 2, and 20 served on the Caton Trust and Requests 1, 2, 20, and 21 served on the Waters Trust ask for all documents responsive to the subjects and are not restricted to matters involving or related in some manner to the Debtor. For example, the Debtor seeks formation documents from both trusts, but made no showing as to why the formation of either trust, both of which occurred years before either conducted any business with the Debtor, would have any bearing upon it or this case.  While no doubt made in good faith and not for a blatantly improper purpose such as harassment, the privacy interests of the Caton Trust and the Waters Trust far outweigh the Debtor's right to know the information sought, particularly where that formation long predates any relationship with the Debtor. As a result, the Caton Trust's objections to Requests 1, 2, and 20, and the Waters Trust's objections to Requests 1, 2, 20, and 21 are allowed as overly broad with respect to matters and business not involving the Debtor, subject to the further analysis below.

The Debtor also requested from both trusts:

> 3.      *Please produce and identify all documents relating to or concerning the Debtor.*

> 4.      *Please produce and identify all documents relating to or concerning the Property.*

Both of these items are clearly related to the Debtor, and are sufficiently broad to pick up any documents responsive to Requests 1, 2, and 20 to the Caton Trust, and Requests 1, 2, 20, and 21 to the Waters Trust that affect or pertain to the Debtor as well. Therefore, to the extent documents exist that satisfy Requests 1, 2, or 20 to the Caton Trust, and those responsive to Requests 1, 2, 20, or 21 to the Waters Trust, *and* Requests 3 or 4 for either of them, the Caton Trust and the Waters Trust are ordered to respond and produce those documents, subject to the privilege discussion below. Any documents that include information pertaining to both the Debtor and unrelated businesses may be redacted to protect non-Debtor business details.

8

### Attorney-Client Privilege

Finally, the Respondents all object to the Requests to the extent any document requested is arguably protected by the attorney-client privilege they, or any one of them, may hold with respect to communications with and other documents from Mr. Graves or his law firm. Rule 2004 orders do not abrogate the attorney-client privilege, and, if applicable, the privilege will protect a party from producing otherwise qualifying documents, subject to proper exercise by the client and lack of waiver. At the hearing, the Debtor relayed that it too had been represented in the past by Mr. Graves and to the extent it held an attorney-client privilege, that privilege would be waived. The court, however, cannot rule in a vacuum, as no log of possibly privileged documents has been prepared, the Debtor could not identify any privilege-waivable documents, and no evidence has been presented on when (or if) Mr. Graves or his law firm actually represented the Debtor in the past. Therefore, no ruling can be issued on the attorney-client privilege objection absent a further evidentiary hearing or submission of sufficient stipulations by the parties.

As a result, the attorney-client privilege remains claimed and in effect for the present, but the Respondents must specify its application rather than hide behind a blanket objection. Within fourteen (14) days of the issuance of this order, the Respondents shall produce non-privileged responsive documents not already produced and prepare a privilege log for review by Debtor's counsel. Within the following week, Respondents' counsel and Debtor's counsel shall "meet and confer" to determine if an agreement can be reached on the applicability of the attorney-client privilege, whether further documents can be conditionally  produced, and the terms of production of documents possibly subject to the privilege. To the extent the parties cannot agree, counsel may file further pleadings with respect to those documents and the applicable basis for objection (under

seal if necessary).  If stipulated by the parties, the privilege log may be submitted to the court for review and determination without hearing. The matter will be set for hearing if the parties cannot agree, if otherwise warranted and necessary.

**END OF DOCUMENT**