SO ORDERED.

SIGNED this 4 day of May, 2018.



_____
Joseph N. Callaway
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

YAHWEH CENTER, INC.

    DEBTOR

CASE NO.
16-04306-5-JNC
CHAPTER 11

## MEMORANDUM OPINION

Pending before the court is the Amended Motion to Modify Confirmed Chapter 11 Plan, or in the Alternative Motion to Interpret Confirmed Plan filed by the Plan Trustee on March 9, 2018 (D.E. 422; the "Motion"), and the objection thereto filed by Carla J. Roberts on April 6, 2018 (D.E. 431; the "Objection"). A hearing on the Motion and Objection was held in Greenville, North Carolina on April 11, 2018. Based on the facts in the record, the positions taken by the parties in their papers, and the arguments presented at the hearing, the court makes the findings of fact and conclusions of law appearing below.

## JURISDICTION

This court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O), which this court has the jurisdiction to

hear and determine. *See also In re Circuit City Stores, Inc.*, 557 B.R. 443, 448 (Bankr. E.D. Va. 2016) (quoting *In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011)) ("A bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders.").

## BACKGROUND

Yahweh Center, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 17, 2016 (the "Petition Date"). The Debtor is a charitable non-profit corporation formed and existing under the laws of the State of North Carolina that until shortly before the Petition Date was engaged in "residential treatment and placement services for at-risk, traumatized, suicidal, behaviorally explosive, abused, and/or neglected children ranging in age from five (5) to twelve (12) years old and younger, across eastern North Carolina." Disclosure Statement, D.E. 250 at 5. Ms. Roberts was the Executive Director of the Debtor on the Petition Date. The Debtor filed a chapter 11 plan that was confirmed by order dated May 26, 2017. Order Confirming Plan of Reorganization (D.E. 303; the "Confirmation Order"). The chapter 11 plan confirmed as amended was attached to the Confirmation Order as Exhibit A at pages 4–39 (the "Plan").

The Plan provided for the liquidation of all assets of the Debtor and the appointment of a Plan Trustee, Mr. Richard P. Cook. Among the Plan Trustee's tasked duties was the investigation of actions taken by the Debtor's management prior to the filing of the Debtor's petition, and if warranted the filing of any existing causes of action on behalf of the bankruptcy estate. D.E. 303 at 22–23. These causes of action were divided under the Plan between "Bankruptcy Causes of Action," which were defined as causes of action brought pursuant to chapter 5 of the Bankruptcy Code, and the more general "Causes of Action," which were defined in the broader sense as any

2

viable cause of action arising under any body of law. Thus, the Plan designated Bankruptcy Causes of Action as a specific and narrow subset of Causes of Action. *See* D.E. 303 at 6–7.

The Plan contemplated the Plan Trustee bringing Causes of Action on behalf of the estate after confirmation, on a contingent-fee basis. Any recovered proceeds would be applied first to the Plan Trustee contingency fee, next to unpaid approved Class 1 administrative claims, and then to the Class 3 wage priority claims of former employees of the Debtor other than Mrs. Roberts for unpaid prepetition wages entitled to priority under 11 U.S.C. § 507(a)(4). If the priority wage Class 3 claims were paid in full, any remaining proceeds would be split evenly between priority tax claimants in Class 4 and any remaining nonpriority wage claims in Class 3. In the event proceeds still remained, the balance would be distributed pro-rata to the general unsecured creditors in Class 9. In the event that all claims in Classes 1, 3, 4, and 9 were paid in full, any excess proceeds would be distributed to the claims of Ms. Roberts, whose voluntarily-subordinated claims were designated Class 10 in the Plan. At issue in the present dispute is the interpretation of language contained in decretal paragraph 3 of the Confirmation Order,[1] which provides as follows:

> 3. Any party with standing wishing to ***assert an objection to claim***, ***file an adversary proceeding to assert a Bankruptcy Cause of Action***, ***or assert any other adversary proceeding or claim against or on behalf of the Estate*** shall have ***180 days from the Effective Date to file such objection, adversary proceeding, or assert such claim***. The Plan Trustee or other party in interest may move to extend this deadline for good cause shown. Notwithstanding the foregoing, any party with standing wishing to assert an adversary proceeding or objection to claim against any Class 3 Claimants included in the Class Wage Claim shall have 30 days from the Effective Date to file such objection or adversary proceeding. Confirmation of the Plan does not preclude the filing of any objection to claim, or adversary proceeding by a party with standing, ***provided that such objection and/or adversary proceeding is timely filed.***

D.E. 303 at 2, ¶ 3 (emphases added).

---

[1] This language also appears in identical form in the body of the Plan itself, which is incorporated by reference into the Confirmation Order, at Article V, Section P. *See* D.E. 303 at 25.

## PROCEDURAL HISTORY

The Plan Trustee filed a Motion to Extend Time to File Adversary Proceedings on December 14, 2017 (D.E. 399), asserting that the deadline to file Causes of Action set forth in Paragraph 3 (the "AP Deadline") had not yet then expired, and thus his motion to extend time could be considered under Rule 9006 as being made "before the expiration of the period originally prescribed . . . ." Fed. R. Bankr. P. 9006(b)(1). Ms. Roberts filed an objection to that motion on December 19, 2017 (D.E. 401) contending that it was filed after the AP Deadline had expired and was only allowable if, in addition to good cause shown, the Plan Trustee could demonstrate that his "failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

In an Order dated January 11, 2018 (D.E. 407; the "Prior Order"), the court denied the motion to extend time, finding that the Effective Date of the Plan was at the latest June 12, 2017, thereby making December 11, 2017 the date "180 days from the Effective Date." *See* D.E. 303 at 2 & 25; D.E. 407 at 4 ("[T]he last possible date on which to file adversary proceedings was December 11, 2017.") Because the Plan Trustee's motion to extend the AP Deadline was filed outside of this time period, the court determined that the Plan Trustee was required to demonstrate excusable neglect to warrant an extension. Fed. R. Bankr. P. 9006(a)(1). The Plan Trustee was not able to demonstrate excusable neglect, and the court accordingly denied the motion to extend.

## POSITIONS OF THE PARTIES

After denial of the motion to extend time, the Plan Trustee filed a motion to modify the confirmed Plan,[2] seeking to establish a new AP Deadline by modifying Paragraph 3 as follows:

> Any party with standing, including the Plan Trustee, wishing to: assert an objection to claim, file an adversary proceeding to assert a 'Cause of Action' (as

---

[2] The Plan Trustee initially filed his motion to modify on January 11, 2018 (D.E. 409), to which both the Bankruptcy Administrator (D.E. 411) and Ms. Roberts (D.E. 416) objected. The Plan Trustee then filed an amended motion, which is currently before the court, on February 6, 2018 (D.E. 422). Only Ms. Roberts objected (D.E. 431) to the amended motion.

4

>defined by the Plan) that accrued prior to the Petition Date, or file an action before any tribunal to assert a 'Cause of Action' (as defined by the Plan) that accrued prior to the Petition Date, shall have two years from the Petition Date, or August 17, 2018, to file such objection, adversary proceeding, or action. The deadline for filing a 'Cause of Action' (as defined by the Plan) that accrued after the Petition Date shall be governed by its respective statute of limitations and is not subject to the August 17, 2018 deadline. These deadlines are intended to more closely reflect the language of 11 U.S.C. §§ 108(a), and 546(a)(1)(A) and create a two-year deadline from the Petition Date for filing pre-petition Causes of Action, and also causes of action arising under Chapter 5 of the Bankruptcy Code. Pursuant to Fed. R. Bankr. P. 6009, the Plan Trustee may prosecute any and all Causes of Action held by the Bankruptcy Estate before any tribunal.

D.E. 422, at 4, ¶ 8 (the "Proposed Modification"). Alternatively, the Motion seeks to have the court further interpret and construe the existing Paragraph 3 language "to permit the Plan Trustee to prosecute causes of action arising under non-bankruptcy federal or state law in non-bankruptcy court until such time as the applicable statute of limitations expires because the 180 day provision in the Plan does not apply to such actions." *Id.* at 8, ¶ 21.

Ms. Roberts objected to the relief sought by the Plan Trustee, advancing six discrete arguments in support of her position:

(1) The Plan Trustee lacks standing to pursue modification of the plan;
(2) The doctrine of *res judicata* bars the relief requested in the Motion because it was adjudicated in the Prior Order;
(3) Circumstances do not warrant modification of the plan;
(4) The plan has already been substantially consummated, thereby precluding modification;
(5) The plan would not be confirmable with the Proposed Modification under § 1129(b); and
(6) There has been an inadequate disclosure of information about the Proposed Modification, thereby failing to satisfy § 1125.

D.E. 431 at 3–4. In addition to presenting arguments on these points at the hearing on the Motion and Objection, counsel for both parties, as well as the Bankruptcy Administrator (the "BA"), proposed various interpretations of the language in the AP Deadline in response to the Plan Trustee's request for judicial construction of that provision.

5

## DISCUSSION

Two discrete legal issues are presented: first, the court must determine whether the Plan Trustee may bring Causes of Action after the expiration of the AP Deadline, and if not, whether modification of the plan is possible and appropriate under § 1127 over Ms. Roberts' objections. Because a construction of the AP Deadline favorable to the Plan Trustee would render the request to modify the plan moot, the court will address the interpretation of the AP Deadline first.

### I.    Interpreting the AP Deadline

Although confirmation of a chapter 11 plan is generally treated as a final judgment with *res judicata* effect as to any claims that could have been brought or raised prior to confirmation, *see, e.g.*, *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996), a plan may also provide for a reservation of rights that preserves claims post-confirmation. *See* 11 U.S.C. § 1123(b)(3)(B); *In re Railworks Corp.*, 325 B.R. 709, 716–19 (Bankr. D. Md. 2005). The parties do not dispute that Causes of Action survived confirmation of the Plan, *see* D.E. 303 at 24–25; 30–31, and Ms. Roberts concedes that the Plan Trustee had the power to bring the Causes of Action – but only if filed before the AP Deadline expired. *See* Obj., D.E. 431, at 1, ¶ 4–5. Ms. Roberts contends that the language in the AP Deadline creates an absolute bar date by which any Cause of Action must be brought. Effectively, Ms. Roberts takes the position that the AP Deadline operates in a manner akin to a statute of repose and bars claims not timely filed. The Plan Trustee alternatively contends that (1) the AP Deadline is simply a procedural provision that remains subject to extension and does not extinguish claims not filed before the deadline, and (2) it only applies to Bankruptcy Causes of Action pursued in bankruptcy court, and not to all Causes of Action pursued in some other forum (i.e. state court).

In his first argument, the Plan Trustee more or less renews the extension request that was denied previously. Ms. Roberts relies on "law of the case" and other issue preclusion principles to block the request. As noted above, the court has already determined that the deadline referenced in Paragraph 3 of the Confirmation Order was December 11, 2017 [s*ee* D.E. 303 at 2 & 25; and D.E. 407 at 4], and that because the motion to extend was filed after the deadline, the time could not be extended under Bankruptcy Rule 9006(b)(1). The answer to that question has not changed.

However, of greater significance here is what was *not* decided in the Prior Order. Neither party sought a judicial interpretation at that time of the effect of the AP Deadline on Causes of Action otherwise existing. Rather, both parties assumed that the AP Deadline bars any action brought by the Plan Trustee in the absence of an extension of time. In the motion and response leading to the Prior Order, neither party considered whether the AP Deadline might not apply to the Plan Trustee in the same manner as it applied to other parties; indeed, the only provision of the Plan the court was called upon to interpret outside of the AP Deadline was the language establishing the Effective Date of the Plan. Thus, in the Prior Order, the court determined only that (1) December 11, 2017 was the date 180 days after the Effective Date of the Plan; (2) the Plan Trustee's motion to extend was filed after December 11, 2017; and (3) the Plan Trustee had not demonstrated excusable neglect. The court expressly limited its findings in the Prior Order to the matter before it, and pointedly provided that those findings had "no bearing on how, whether or in what forum the relevant claims might otherwise be pursued." D.E. 407 at 6.

At the hearing on the present motion, the BA pointed to Article IX of the Plan to support the position that the AP Deadline does not affect the Plan Trustee in the same manner or degree as "any party with standing." Article IX provides, in relevant part:

> ***Notwithstanding anything to the contrary therein***, the provisions of the Plan, Disclosure Statement, or Confirmation Order shall not have and are not

7

> intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor, the Estate, and/or Plan Trustee may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement. . . . Furthermore, notwithstanding any provision or interpretation to the contrary, ***nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date***.

D.E. 303 at 30–31 (emphasis added) (hereinafter, the "Preservation Clause"). The BA thereby advocates that the AP Deadline does not apply to the Plan Trustee at all, or at least cannot be interpreted as a bar here, because to do so would conflict with Article IX's clarification that "nothing in the Plan or Confirmation Order . . . shall be deemed to constitute a . . . bar . . . of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date." *Id.*

"Because of a plan's likeness to a consent decree, a chapter 11 plan should generally be interpreted as if it were a contract." *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 856 (Bankr. E.D. Va. 1995) (quoting *C.F. Brookside, Ltd. v. Skyview Mem'l Lawn Cemetery (In re Affordable Hous. Dev. Corp.)*, 175 B.R. 324, 329 (9th Cir. B.A.P. 1994)). *See also Santee v. J&R Mktg. (In re Mako, Inc.)*, 127 B.R. 474, 476 (Bankr. E.D. Okla. 1991) (citing *In re Stratford of Tex., Inc.*, 635 F.2d 365, 368 (5th Cir. 1981)) ("[A] Chapter 11 Plan is a contract, subject to the same rules of interpretation as such written contracts."). The Plan contains a choice of law provision that provides that the laws of the State of North Carolina govern its interpretation unless "a rule of law or procedure is supplied by federal law . . . or unless otherwise specifically stated [in the Plan]." D.E. 303 at 12. Accordingly, the Plan should be interpreted and construed pursuant to principles of North Carolina contract law.

If the court were construing only this clause from the Plan in a vacuum, Ms. Roberts might prevail. However, in construing a contract, its "meaning 'is derived not from a particular contractual term but from the contract as a whole.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 380–81 (4th Cir. 2017) (quoting *State v. Philip Morris USA Inc.*, 359 N.C. 763, 618 S.E.2d 219, 225 (2005)). Here, the AP Deadline does not act as an absolute bar to all claims not brought before it expired for two reasons. First, several other provisions in the Plan, including the Preservation Clause, qualify and temper the applicability of the AP Deadline as an absolute bar to claims of the Debtor not brought by that date; and second, construing the AP Deadline to bar the existing claims of the Debtor would undermine the clear intent of the parties to the Plan (including Ms. Roberts) as expressed in multiple provisions throughout.

In construing a contract, North Carolina courts endeavor to "give effect to every word of a contract, if possible." *SAS Inst., Inc.*, 874 F.3d at 381 (citing *Marcuson v. Clifton*, 154 N.C. App. 202, 203, 571 S.E.2d 599, 601 (2002)). "[N]ontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise," and courts may "resort to dictionaries to identify 'the common and ordinary meaning of words and phrases.'" *Id.* at 380 (first quoting *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518, 522 (1970), then quoting *Marcuson*, 154 N.C. App. at 203, 571 S.E.2d at 601). Courts "should not reach interpretations that render contractual terms meaningless or redundant." *Hunter v. Town of Mocksville*, 237 F. Supp. 3d 349, 364 (M.D.N.C. 2017) (citing *Lane v. United States*, 286 F.3d 723, 731 (4th Cir. 2002)). Finally, courts should construe a contract's terms "as consistent and not conflicting 'unless no other reasonable interpretation is possible.'" *Holden v. Raleigh Restaurant Concepts, Inc.*, 141 F. Supp. 3d 454, 459

(E.D.N.C. 2015) (quoting *Ray D. Lowder, Inc. v. N.C. State Highway Comm'n*, 26 N.C. App. 622, 217 S.E.2d 682, 693 (1975)).

Common sense suggests that failure to do what is required results in some consequence. Indeed, the final sentence of the AP Deadline provides that "[c]onfirmation of the Plan ***does not preclude the filing*** of any objection to claim, or adversary proceeding by a party with standing, ***provided that such objection and/or adversary proceeding is timely filed.***" D.E. 303 at 25 (emphases added). The first clause establishes that confirmation of the Plan does not prevent a party with standing from filing an adversary proceeding, but the second clause imposes a condition on this provision. The phrase "timely filed" is ordinarily used to mean that something is filed within the time limit established by some rule, statute, or court order. The context here makes clear that the time limit referred to is the time limit established by the AP Deadline—180 days from the Effective Date of the Plan, or December 11, 2017, as established by the Prior Order. Thus, the final sentence of the AP Deadline gives effect to the word "shall" in the first sentence: if a claim or adversary proceeding is timely filed, then confirmation of the Plan does not preclude its filing. Conversely, if a claim is not timely filed, then, standing alone, does this provision of the Plan preclude its filing?

By its plain terms, and standing alone, the AP Deadline would apply to the broadest class of potential litigants—any party with standing—and to a similarly broad class of claims—both against the Estate and on behalf of the Estate. "Estate" is defined under the Plan to mean "with respect to the Debtor, the estate created for the Debtor upon the filing of the Bankruptcy Case, pursuant to 11 U.S.C. § 541." *Id.* at 9. Nothing else showing, the Plan Trustee falls into this broad category of "any party with standing." He did not file any claim or adversary proceeding before December 11, 2017, and thus the final sentence of the AP Deadline would appear to preclude him

from filing such claims now. However, the court must look to all provisions of the Plan when giving effect to the AP Deadline, and other provisions qualify the scope of the AP Deadline as relevant here.

Specifically, the language of the Preservation Clause provides, in relevant part, that "***notwithstanding any provision or interpretation to the contrary***, nothing in the Plan or Confirmation Order . . . shall be deemed to constitute a . . . bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date." *Id.* at 31 (emphasis added). When the relevant language in the Preservation Clause is construed with the words given their ordinary and plain meaning, it provides that "despite the AP Deadline, nothing in the Plan or Confirmation Order . . . shall be deemed to constitute a . . . prohibition, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date." This language, which is set out in a separate Article of the Plan, exempts a narrow class of claims held by a specific litigant from the AP Deadline restriction. The Preservation Clause excludes from the broad sweep of the AP Deadline any claims or causes of action "possessed by the Debtor prior to the Effective Date." D.E. 303 at 31.

Construing the AP Deadline to operate as an absolute bar to filing Causes of Action by the Plan Trustee on behalf of the Debtor would disregard the Preservation Clause, thereby failing to give effect to a major provision and term in the Plan. Moreover, construction of the AP Deadline and Preservation Clause in conjunction does not render either superfluous, nor does it create a conflict between them. Rather, the AP Deadline is properly construed as a temporal limitation applying to a broad class of potential litigants and claims, while the Preservation Clause qualifies claims held by the Debtor on the Effective Date as a limited exception from a singular reading of

11

the AP Deadline. Because the AP Deadline is properly construed by reference to the whole Plan, if the Plan Trustee seeks to assert valid and proper Causes of Action possessed by the Debtor and existing before the Effective Date of the Plan, the AP Deadline does not act to bar this pursuit.[3] Moreover, construing the Preservation Clause and AP Deadline in this fashion harmonizes the two with the Plan's overarching intent of enabling the Plan Trustee to pursue the Causes of Action unhindered, for the benefit of several classes of creditors.[4]

## II. Plan Modification under § 1127

Because the court has determined that proper construction of the AP Deadline does not present an obstacle to the Plan Trustee's pursuit of Causes of Action on behalf of the Debtor, his request to modify the Plan is moot. However, the court will address one of Ms. Roberts' six objections to modification, since, although raised specifically in opposition to modification, it may fairly be read to apply to both plan modification and construction of the Plan. Specifically, Ms. Roberts contends that any construction or modification of the Plan to permit the Plan Trustee to proceed with Causes of Action brought or filed after December 11, 2017 is *res judicata* because "[t]he [Prior Order] is a final order which resolves all issues pertaining to an extension of time to file adversary proceedings under the Confirmed Plan." Obj., D.E. 431 at 4.

The doctrine of *res judicata*, or claim preclusion, applies if the following three elements are satisfied: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of the parties or their privies in the two

---

[3] Other time relation bars such as statutes of limitations and the doctrine of laches continue to apply unabated.

[4] Because the court concludes that the claims the Plan Trustee seeks to bring are not barred by the AP Deadline, it is unnecessary to interpret what effect, if any, the AP Deadline would have on claims brought by any other party with standing. The court therefore expresses no opinion and reaches no conclusion as to the effect and scope of the AP Deadline on other potential litigants. The court simply finds that the AP Deadline is not applicable to causes of action possessed by the Debtor and asserted by the Plan Trustee on its behalf.

12

suits." *SAS Inst., Inc.*, 874 F.3d at 378 (quoting *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004)). "A decision generally is final and appealable if it leaves nothing further over which the district court is to preside other than the execution of the judgment." *Humphrey v. Prudential Sec. Inc.*, 4 F.3d 313, 317 (4th Cir. 1993) (citing *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 731 (4th Cir. 1991)). Claim preclusion is a "'practical' doctrine[]," and is "ultimately governed by whether the present case has already been decided, and whether the party has previously had a fair shot with respect to claims raised in the present action." *Id*. Claim preclusion serves several important interests: avoiding duplicative litigation and the concomitant increase in expense to the parties, conserving judicial resources, and minimizing "the risk of undermining the authority of judicial decisions by preventing inconsistent judgments." *Id.* (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). Any claim alleged to be barred by *res judicata* must thus be "closely examine[d] . . . to determine whether those interests would be served [by applying the doctrine]." *Id.*

Here, the same parties whose litigation produced the Prior Order are again before the court, so there is an identity of parties. While the identity of the causes of action presents a closer issue, the court need not decide it, because Ms. Roberts' argument founders on the first element of *res judicata*. As described in detail above, the Prior Order cannot be said to be a final judgment on the merits of the interpretation of the AP Deadline. The only issue before the court at that time was whether the Plan Trustee satisfied the requirements of Rule 9006(b)(1) for extending the AP Deadline. Neither party argued, nor did the court conclude, that the AP Deadline was a bar to the Causes of Action the Plan Trustee sought to pursue. In fact, the court specifically precluded such a finding by expressly holding that "[t]his order is limited to the issue before it, and ***has no bearing on how, whether or in what forum the relevant claims might otherwise be pursued***." D.E. 407 at

13

6 (emphasis added). "When a court reserves a question for further adjudication, a judgment does not bar subsequent determination of that question." *In re Palumbo Family Ltd. P'ship*, 182 B.R. 447, 462 (Bankr. E.D.N.C. 1995) (quoting *Washington Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp.*, 876 F.2d 690, 699 (9th Cir. 1989)). Further, unlike the Plan, which the court has construed under principles of North Carolina contract law, the court has plenary authority and is indeed in the best position to interpret its own prior orders. *In re Tomlin*, 105 F.3d 933, 941 (4th Cir. 1997). The final sentence in the Prior Order was a reservation by the court for further adjudication of this matter, with the benefit of further research and argument by the parties. Thus, rather than leaving "nothing further" over which the court was to preside, the Prior Order expressly contemplated further litigation over what claims the Plan Trustee could bring and where, and was therefore not a final judgment on the merits with *res judicata* effect.

     Moreover, giving preclusive effect to the Prior Order would not serve the interests that the doctrine is designed to protect. There is no duplicative litigation, because this is the first time the court has been called upon to interpret and construe any provisions of the Plan. The matters considered previously were simply whether or not the AP Deadline had come and gone, and whether a Rule 9006 motion to extend could be allowed. This order does not disturb those express findings. Instead, it finds that the AP Deadline does not apply to the Plan Trustee's claims pursuant to the court's interpretation and construction of the Plan as a whole. Finally, it is clear from the record of the hearing precipitating the Prior Order that neither party had an opportunity to litigate the proper interpretation or construction of the AP Deadline at that time. When asked whether he contended that the AP Deadline supplanted and replaced the underlying statute of limitations for any claims, such that it operated as an absolute bar to all claims held by any party once the deadline passed, counsel for Ms. Roberts acknowledged that while that was his position, "[he] had not

considered that issue before the hearing today, so [he didn't] have any law [to support this proposition]." January 8, 2018 Hr'g Audio, D.E. 406, at 00:54:05 – 00:54:30.

Finally, in this result, no judicial resources are wasted; on the contrary, the court specifically limited the Prior Order to "the issue before it" in anticipation of probable further litigation. This order and the Prior Order are consistent because neither make a finding on the same issue. Accordingly, the court's determination of the date established by the AP Deadline is not *res judicata* as to the interpretation and construction of its applicability, and the Prior Order does not preclude the Plan Trustee from seeking such relief now.

## CONCLUSION

For the foregoing reasons, the relief sought in the Motion seeking judicial interpretation and construction of the AP Deadline and other applicable provisions of the Plan is ALLOWED. The court holds that the AP Deadline does not apply to bar Causes of Action asserted by the Plan Trustee on behalf of the Estate, provided the Causes of Action were "possessed by the Debtor prior to the Effective Date" of the Plan. The modification of the Plan sought in the Motion is DENIED AS MOOT.

**END OF DOCUMENT**